**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| JANET GUZMAN, *et al*, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil No.:  5:25-cv-02290-JMG |
| | : | |
| TELFAIR, INC., *et al.*, | : | |
| Defendants. | : | |

---

**MEMORANDUM OPINION**

**Gallagher, J.**                                                                                    **March 10, 2026**

## I.    OVERVIEW

Currently before this Court is a Motion to Dismiss the Complaint. There are six Plaintiffs in this matter: Janet Guzman, Gallienne Nabila, Ursula Mayes, Stephanie Rao, Yodit Yemane, and Ashely Ilene bring nine causes of action arising from Defendants' alleged misappropriation, alteration, and unauthorized use of their images. Plaintiffs allege that they are professional models. According to the Complaint, Defendants used photographs of Plaintiffs in advertising materials to promote their nightclub, MainGate Nightclub ("MainGate"), without their permission. Plaintiffs allege that this unauthorized use caused them significant financial harm and damaged their professional reputations. For the reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part. An appropriate Order follows.

## II.    BACKGROUND

Taking the allegations in the Complaint as true, the relevant facts are as follows. Plaintiffs are all well-known professional models who earn their livelihoods modeling and licensing their images to companies, magazines, and individuals. Complaint ¶ 19. During the relevant period,

Defendants owned MainGate, a nightclub in Allentown, Pennsylvania. Dominic Germano ("Germano") is the owner and CEO of Telfair, Inc. ("Telfair"), and he maintained operational control over MainGate and all of their advertising efforts. Complaint ¶ 18.

On multiple occasions, Defendants shared Plaintiffs' images on their social media accounts without Plaintiffs' knowledge, consent, or authorization. The images were taken from Plaintiffs' own social media pages, which each Plaintiff uses to promote their services, attract potential clients, expand their fan base, and develop their personal brand. Complaint ¶ 25. Plaintiffs allege that Defendants used their images in a manner that falsely suggested they worked at, endorsed, or were otherwise associated or affiliated with Defendants. Complaint ¶ 21. They further assert that this unauthorized use created negative associations and conveyed a misleading impression of affiliation with MainGate, causing substantial harm to their professional reputations and career opportunities. Complaint ¶ 59.

### III.    LEGAL STANDARD

"To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

2

conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). A court is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Wheeler v. Wheeler*, 639 F. App'x 147, 149 (3d Cir. 2016) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)).

## IV.    DISCUSSION

### A.  Claims Against Defendant Dominic Germano in His Personal Capacity

Defendants contend that the Complaint is an improper attempt to pierce the corporate veil of MainGate. As Plaintiffs correctly point out, that argument misses the point. An individual may be held liable under the Lanham Act when he "actually and substantially participates" in the corporation's infringement. *See Elec. Lab. Supply Co., Inc. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992); *Donsco, Inc. v. Casper, Corp.*, 587 F.2d 602, 606 (3d Cir. 1978 (recognizing that a corporate officer is individually liable for the torts he commits under the Lanham Act). In other words, the corporate form does not shield a person from liability for their own tortious conduct.

Plaintiffs allege that Germano, in his capacity as owner and CEO of Telfair, Inc., was directly involved in the advertising and promotion at issue, and that he exercised operational control over the company, including its advertising practices. For example, Plaintiffs pled, "According to publicly available records, Dominic Germano, in their capacity as principal, owner and/or CEO of Telfair, Inc., maintained operational control over MainGate Nightclub including all advertising relating thereto." Complaint ¶ 18. Accepting those allegations as true at this stage, Plaintiffs have adequately pled Germano's personal involvement in the challenged conduct. Defendants' Motion therefore fails as to this issue, and the claims against Germano may proceed.

### B.  Lanham Act Claims: False Advertising and False Association

Defendants argue that a six-year statute of limitations is applicable to claims brought under

the Lanham Act. They further contend that Plaintiffs' Lanham Act claims are barred by the doctrine of laches because the alleged misappropriation occurred several years ago. They argue that Plaintiffs' delay in asserting their rights will prejudice them, noting in particular that MainGate ceased operations in November 2024, several months before the Complaint was filed in May 2025, which they claim resulted in the loss of evidence necessary to mount a defense. Defendants further assert that Plaintiffs' own exhibits show they were able to access the advertisements at issue publicly. According to Defendants, the absence of such allegations demonstrates an inexcusable delay that warrants application of the laches doctrine, requiring dismissal of the Lanham Act claims or, at a minimum, limiting Plaintiffs' recovery to the alleged infringements occurring within the past six years.

Laches is an equitable doctrine with two essential elements. First, the plaintiff must have known or, through reasonable diligence, should have known of the claim but failed to act. *Sprague v. Casey*, 550 A.2d 184, 187 (Pa. 1988) (holding that laches applies when a party "is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another."). Second, to prevail on an assertion of laches, the plaintiff's unreasonable delay must prejudice the defendant's ability to defend the case, such as through lost evidence, faded memories, or changed circumstances. *Id.* The doctrine exists to prevent a party from sitting on their rights and later asserting them when it becomes strategically advantageous but unfair to opposing party. In essence, laches is a fairness-based limit on stale claims, applied when permitting lawsuits to proceed would be inequitable.

By contrast, the statute of limitations "is an affirmative defense, and as such may only provide grounds for dismissal under Rule 12(b)(6) if its applicability is apparent on the face of the complaint." *Hinton v. Sansom Street, Inc.*, 2021 WL 1313107 (E.D. Pa. April 7, 2021). Under

Pennsylvania law, a cause of action generally does not accrue until the injured party discovers, or through reasonable diligence should have discovered, the facts forming the basis of the claim. *Beauty Time, Inc. v. VU Skin Sys.*, 118 F.3d 140 (3d Cir. 1997). The Defendants' Motion to Dismiss based the statute of limitations and laches is denied because the Complaint does not specify when the Plaintiffs discovered, or through reasonable diligence should have discovered, the publication of their images on Defendants' social media accounts.

Defendants further contend that Plaintiff's claims brought under the Lanham Act should be dismissed because they fail to state a claim upon which relief can be granted. The Court disagrees. Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), creates "two distinct bases of liability: false association ... and false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). Section 1125(a)(1)(A) prohibits "false or misleading" claims that are "likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]" Claims made under this provision are often called "false designation of origin" or "false association" claims.

To state a claim for false association under § 1125(a)(1)(A) of the Lanham Act, a Plaintiff must allege that the defendant "uses a designation, (2) in interstate commerce, (3) in connection with goods, (4) which designation is likely to cause confusion, mistake, or deception as to (5) the origin, sponsorship, or approval of [the] [d]efendant's goods, and (6) [the] [p]laintiff has been or is likely to be damaged by these acts." *Hinton v. Sansom Street, Inc.*, 2021 WL 1313107, at *4 (E.D. Pa. April 7, 2021) (*quoting First Keystone Fed. Sav. Bank v. First Keystone Mortg.*, 923 F. Supp. 693, 707 (E.D. Pa. 1996)). Additionally, (1) the mark at issue must be legally protectable, (2) the plaintiff must own the mark, and (3) the defendant's use of the mark to identify its goods

or services must be likely to create confusion concerning the plaintiff's sponsorship or approval of the goods or services. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1014 (3d Cir. 2008).

To state a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B), a plaintiff must show that "(1) [the] defendant has made false or misleading statements about their own product [or another's]; (2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the advertised goods traveled in interstate commerce; and (5) that there is a likelihood of injury to the plaintiff[s] in terms of declining sales, loss of good will, etc." *Hinton v. Sansom Street, Inc.*, 2021 WL 1313107, at *4 (E.D. Pa. April 7, 2021) (*quoting Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 129 (3d Cir 1994).

The Complaint sufficiently alleges the factual basis for Plaintiffs' false association and false advertising claims under the Lanham Act. It asserts that each Plaintiff is a well-known professional model who earns their livelihood by modeling and licensing their images for use in advertising Complaint ¶ 19. The Complaint further alleges that "Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands." Complaint ¶ 20.

According to the Complaint, Defendants misappropriated and intentionally altered Plaintiffs' images to create the false impression that Plaintiffs worked at, endorsed, or were otherwise associated or affiliated with Defendants. Complaint ¶ 21. Plaintiffs also allege that Defendants knowingly created this false impression to potential clientele and were aware of the

6

confusion their advertising would cause. Complaint ¶¶48-49, 73. For example, the Complaint states that, "[i]n publishing Plaintiffs' altered images and likeness, it was Defendants' intention to create a false impression to the general public that Plaintiffs were entertainers working at the Defendants, or endorsed the Defendants." Complaint ¶ 124. The Complaint also states that Defendant knew or should have known that their unauthorized use of Plaintiffs' image, likeness, and identities would result in consumer confusion. Complaint ¶ 87. Plaintiffs allege that this was done to "generate revenue" by attracting increased business to MainGate. Complaint ¶ 101. They specifically allege that Defendants' unauthorized use of their images "deprives them of income they are owed relating to commercialization of their Images," and has harmed their careers and reputations. Complaint ¶¶ 58-59.

Defendants also argue that Plaintiffs' Lanham Act claims should be dismissed because the alleged conduct does not implicate interstate commerce. The Complaint, however, alleges that Defendants posted Plaintiffs' images on social media platforms including Facebook, Twitter, and Instagram. Complaint ¶ 46 (alleging that Defendants used these accounts to promote MainGate and attract patrons). These allegations are sufficient at the pleading stage because Internet-based advertising inherently implicates interstate commerce, as the Internet is an instrumentality and channel of interstate commerce capable of reaching a worldwide audience. *See United States v. MacEwan*, 445 F.3d 237, 244-245 (3d Cir. 2006).

### C. State Law Claims

Plaintiffs' claims brought under the Lanham Act will not be dismissed. Because those federal claims remain in the case, the Court will also retain supplemental jurisdiction over Plaintiff's state-law claims. Defendants argue in the alternative that, even if supplemental jurisdiction exists, each of the state-law claims should be dismissed for failure to state a claim. The

Court addresses those arguments below.

### a.  Right of Privacy Claim

Defendants move to dismiss Plaintiffs' claim for invasion of privacy by appropriation of name or likeness. At this stage, the claim is adequately pled, and dismissal is unwarranted. Plaintiffs allege that Defendants took their Images and used them in advertisements promoting Defendants' business. These allegations satisfy the elements of the tort: Defendants used Plaintiffs' likenesses; the use was for Defendants' commercial benefit; Plaintiffs did not consent; and Plaintiffs suffered resulting harm, including reputational injury and loss of income. Pennsylvania recognizes a claim for invasion of privacy by appropriation where a defendant uses a plaintiff's name of likeness for advertising or other commercial purposes without consent. *See Vogel v. W.T. Grant Co.*, 327 A.2d 133 (Pa. 1974) ("One who appropriates the name or likeness of another is subject to liability to the other for invasion of privacy"); *Lewis v. Marriott Int'l Inc.*, 527 F. Supp. 2d 422, 429 (E.D. Pa. 2021) (reiterating that Pennsylvania has "expressly recognized a cause of action for invasion of privacy by appropriation of name or likeness."). Accordingly, the Complaint sufficiently states a right-of-privacy claim at this stage.

### b.  Right of Publicity Claim

Defendants also move to dismiss the right of publicity claim, asserting that Plaintiffs have not alleged a sufficient commercial purpose or resulting injury. Neither argument is persuasive. Under Pennsylvania law, an individual violates another's right of publicity by "appropriating its valuable name or likeness, without authorization, and using it to defendant's commercial advantage." *Lewis v. Marriott International, Inc.*, 527 F. Supp. 2d 422, 428 (E.D. Pa. 2007) (holding that the unauthorized use of a person's name for commercial purposes is sufficient to state a right of publicity claim) (*citing Rose v. Triple Crown Nutrition, Inc.,* 2007 WL 707348, at

*3 (E.D. Pa. Mar. 2, 2007). Plaintiffs have adequately pled a common law right of publicity claim.

The Complaint alleges that Defendants used Plaintiffs' photographs and likenesses in advertisements and promotional materials for Defendants' business, and that Defendants did so without Plaintiffs' knowledge or consent. These allegations are sufficient to establish commercial use at the pleading stage. Whether Defendants in fact used the images for commercial gain is a factual question inappropriate for resolution at this stage. Plaintiffs further allege that the use was plainly promotional, intended to attract customers by creating the false impression that Plaintiffs were affiliated with or endorsed MainGate. Taken together, these allegations satisfy the requirements of the claim: Defendants used Plaintiffs' likenesses for commercial purpose without consent, thereby appropriating the commercial value of Plaintiffs' identities and causing both reputational and economic harm, including lost modeling opportunities and dignitary injury. As a result, Plaintiffs' right of publicity claims will proceed.

### c. Defamation Claim

Plaintiffs' defamation claim, however, cannot survive. According to Plaintiffs, the advertisements falsely implied that they were employed by or endorsed MainGate, and such implications allegedly exposed them to "hatred, shame, ridicule," and diminished their professional standing as models. Even accepting these allegations as true, the claim fails because the challenged advertisements do not contain a false statement of fact about any Plaintiff.

To plead defamation, a plaintiff must allege a false statement of fact that tends "to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001). The alleged implication that Plaintiffs worked, promoted, or were otherwise associated with MainGate does not inherently convey any defamatory meaning as a matter of law. While these allegations

potentially support other theories, they do not constitute defamation.

Plaintiffs' defamation per se theory fares no better. Plaintiffs contend that Defendants' advertisements constitute defamation per se because they (1) would tend to injure Plaintiffs in their profession as models, and (2) falsely portray Plaintiffs as "entertainers," thereby imputing unchastity. Neither theory is legally sufficient. The advertisements do not contain any false factual statement about Plaintiffs' professional competence or integrity. The mere use of a model's photograph in promotional materials, without more, does not communicate a defamatory assertion capable of injuring Plaintiffs in their trade. Moreover, nothing in the advertisements at issue assert or imply criminal, immoral, or sexually inappropriate conduct. The mere suggestion that Plaintiffs worked at or endorsed a nightclub does not, as a matter of law, convey an accusation of unchastity to a reasonable viewer. Because amendment would be futile, the defamation claim is dismissed with prejudice.

### d. Negligence Claim and *Respondeat Superior*

Plaintiffs also contend that Defendants maintained, or should have maintained, policies governing the use of intellectual property and publicity rights for promotional and advertising purposes. They further allege that Defendants failed to adopt or enforce procedures to ensure that their advertising materials were not deceptive or misleading. According to Plaintiffs, Defendants owed them, and consumers at large, a duty to maintain and follow adequate policies and procedures to ensure that their advertising materials did not infringe on their property rights and were not deceptive or misleading; that Defendants breached their duty by failing to implement or enforce and follow procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized and deceptive; that Defendants proximately caused harm to Plaintiffs; and that Plaintiffs have

10

suffered damages as a result.

Although Plaintiffs' negligence theory overlaps substantially with their other claims and may ultimately prove duplicative, the Court will permit it to proceed at the pleading stage because Plaintiffs allege a cognizable duty, a breach of that duty, causation, and resulting harm. At this juncture, the Court cannot conclude as a matter of law that Defendants owed no duty to prevent the unauthorized use of Plaintiffs' images or that the negligence claim is entirely displaced by their other causes of action. For the same reasons, Plaintiffs' respondeat superior claim, which seeks to hold Defendants vicariously liable for the acts of their employees, also survives dismissal at this stage.

### e. Conversion Claim

Plaintiffs' claim for conversion cannot stand where they have alleged only that Defendants used or copied their photographs without consent. Under Pennsylvania law, conversion is defined as the "deprivation of another's right of property in, or use of possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 (Pa. Super. Ct. 2000). Conversion requires an intentional exercise of dominion or control over property that seriously interferes with the plaintiff's right to possess it. *See Restatement (Second) of Torts* § 222(A)(1). *See also Baram v. Farugia*, 606 F.2d 42, 43–44 (3d Cir. 1979) ("A person not in lawful possession of a chattel may commit conversion by intentionally dispossessing the lawful possessor of the chattel, by intentionally using a chattel in his possession without authority so to use it"). Unauthorized use of a photograph in advertising does not deprive Plaintiffs of possession, access, or control of the photos. The mere copying or use of intangible property, where the owner remains fully able to use, does not constitute conversion, and no additional factual allegations could transform this type of

conduct into a deprivation of possession. Accordingly, the conversion claim is dismissed with prejudice.

### f.  Unjust Enrichment and Quantum Meruit

Defendants contend that Plaintiffs' unjust enrichment and quantum meruit claims should be dismissed as duplicative because the two theories are synonymous and therefore cannot be pled separately. This argument misses the mark. Under Pennsylvania law, unjust enrichment and quantum meruit claims are properly evaluated together, not dismissed for being pled in the alternative. *See Killian v. Ricchetti*, 2016 WL 6471245 (E.D. Pa. Oct. 31, 2016) ("We consider unjust enrichment and quantum meruit together because a plaintiff must prove the same elements for [both claims].").

Defendants also argue that Plaintiffs have not sufficiently pled either claim. The Court reaches a different conclusion. As to the unjust enrichment claim, Defendants argue that Plaintiffs have failed to state how MainGate unjustly enriched itself. To state a claim for unjust enrichment, Plaintiffs must allege facts tending to show: (1) "benefits conferred on defendant by plaintiff;" (2) appreciation of such benefits by defendant;" (3) "acceptance and retention of such benefits nder such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *MLB Players Inc. v. DraftKings, Inc.*, 771 F. Supp. 3d 513, 536 (E.D. Pa. March 17, 2025).

Plaintiffs assert that Defendants used their images and likenesses in promotional materials without their consent, thereby obtaining a commercial benefit – namely, the advertising and marketing value ordinarily associated with compensated models or brand representatives. Because Plaintiff alleges that Defendants used their images without authorization and for their own commercial gain, this Court finds that the claim is adequately alleged and will survive. *See*

*id.* (concluding that Plaintiffs stated a plausible unjust enrichment claim because Defendants allegedly derived commercial benefits from using Plaintiffs' names, images, and likenesses without authorization); *see also Barnett v. Topps Co.*, 1998 WL 257859, at *1–2 (E.D. Pa. May 21, 1998) (denying a motion to dismiss an unjust enrichment claim where 13 MLB umpires alleged that the defendant commercially exploited their "photographs, likenesses and personas" on baseball cards without their permission, authorization, or knowledge).

For similar reasons, Plaintiffs have adequately pled a claim for quantum meruit. Under Pennsylvania law, quantum meruit permits where a plaintiff has conferred a benefit on a defendant, the defendant appreciated that benefit, and the circumstances make it inequitable for the defendant to retain it without payment. Plaintiffs allege that they are professional models, that companies and brands customarily compensate them for the use of their images, and that Defendants "availed themselves of the benefit of being associated with Plaintiffs" by using their images and likenesses without consent or compensation. At the pleading stage, it is not relevant whether Defendants ultimately derived substantial promotional value from the use of Plaintiffs' images. It is enough that Plaintiffs allege Defendants accepted and retained a benefit for which models are ordinarily paid. These allegations sufficiently assert that Plaintiffs conferred a benefit on Defendants and that equity may require payment for the reasonable value of that benefit. Accordingly, Plaintiffs may pursue both theories at this stage.

### g. Punitive Damages

Plaintiffs request punitive damages, and Defendants move to dismiss that demand, asserting that the conduct alleged does not reflect the level of malice, recklessness, willfulness, outrageousness, or evil motive required under Pennsylvania law. Pennsylvania's standard for punitive damages is well settled. Punitive damages are permitted only for conduct that is outrageous, arising from either an evil motive or a reckless indifference to the rights of others. *McCready v. Edison Schools, Inc.*, 2009 WL 805401 (E.D. Pa. Mar. 26, 2009). The actor's state of mind is central, and the conduct must be intentional, reckless, or malicious. See *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770–72 (Pa. 2005); *Feld v. Merriam*, 485 A.2d 742, 747–48 (Pa. 1984); *Burke v. Maassen*, 904 F.2d 178, 181 (3d Cir. 1990). The Complaint alleges that Defendants used Plaintiffs' images without consent for advertising purposes, but it does not plead facts suggesting malicious intent, wanton misconduct, or the type of egregious behavior necessary to support punitive damages. Accordingly, the punitive-damages demand is dismissed without prejudice.

## V. CONCLUSION

For the reasons set out above, the Court grants in part and denies in part the Defendants' Motion to Dismiss. An appropriate Order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge